Health Services Planning and Review Board
No. 89-383

APPEAL OF CLIPPER HOME

(New Hampshire Health Services Planning and Review Board)

August 29, 1990

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*William J. Donovan* on the brief and orally), for the petitioner, Clipper Home of North Conway.

*John P. Arnold*, attorney general (*Martha Pyle Farrell*, assistant attorney general, on the brief and orally), for the respondent, New Hampshire Health Services Planning and Review Board.

BATCHELDER, J. This is an appeal by the petitioner, Clipper Home of North Conway (Clipper Home), from the State Health Services Planning and Review Board's (board) decision of August 4, 1989, denying relief sought by Clipper Home from conditions imposed by the board in a certificate of need (CON) issued in 1986 to Clipper Home, authorizing construction of a 72-bed health care facility in North Conway. Clipper Home asserts, and we agree, that the following three questions are before us:

> 1. Whether the board's decision was unreasonable or illegal in failing to find that the 1987 Medicaid regulations of the New Hampshire Department of Human Services, Bureau of Provider Audits, were legally controlling over the board's certificate of need (CON) order of June 2, 1986, wherein the board sought to establish Medicaid rates for petitioner for a five-year period.

2. Whether the board's decision was unreasonable in refusing to amend the conditions contained in the June 2, 1986 CON, increasing the amount of the Medicaid rates contained therein to account for unforeseen and uncontrollable costs incurred after the issuance of the CON.

3. Whether the board's decision was illegal or unreasonable by virtue of the board's refusal to find that the 15%-plus-inflation rule of RSA 151-C:12, IV-a was applicable to operating costs controlled by RSA 151-C:12, V, rather than to just capital costs.

For the reasons which follow, we answer the foregoing questions in the negative and affirm the decision of the board.

Clipper Home (then referred to as Gilmore-Holloway) was one of three applicants before the board in 1982 seeking a CON that would enable it to build a health care facility in North Conway. Clipper Home was unsuccessful in that proceeding, and the board rejected its motion for reconsideration as well. An appeal to this court was pursued, and on August 5, 1985, in *Appeal of Lemire-Courville Associates*, 127 N.H. 21, 499 A.2d 1328 (1985), we vacated and remanded the board's decision. After subsequent review by the board, the CON originally awarded to Country Village Health Care, Inc., another competing applicant, was vacated and a CON with certain conditions was issued to Clipper Home.

The CON awarded to Clipper Home on June 2, 1986, included these conditions: 1) Medicaid patients shall, for the first five years, comprise the total number of patients in the facility; 2) Medicaid reimbursements, adjusted for inflation, shall not exceed the following amounts in each of the corresponding years:

| 1987 | $52.35 |
| 1988 | $54.97 |
| 1989 | $54.52 |
| 1990 | $54.03 |
| 1991 | $56.73 |

Notwithstanding the petitioner's arguments to the contrary, we recognize that the board has ample authority to impose conditions on any CON which it issues. RSA 151-C:9 (Supp. 1989) provides in part that "the decision shall be in the form of an approval, denial, or an *approval with conditions . . .*" (emphasis added). It is important to note at the outset that Clipper Home did not take an appeal in a timely fashion from the board's issuance of the CON containing the above conditions from which relief is now sought, but rather mounted a collateral attack seeking relief from the conditions rather than challenging the lawfulness of their insertion in the first place.

Since there was no appeal taken from the board's insertion of the conditions in its CON relating to projected operating costs, the board and the petitioner found themselves in 1989 looking upon the 1986 CON language with hindsight vision. Clipper Home makes much of two post-1986 factors: (1) a substantial diminution of the labor market in the North Conway area, resulting in significantly higher wage rates than were contemplated in Clipper Home's application; and (2) an amendment to the State's Medicaid regulations by the division of human services, bureau of provider audits, which authorized the bureau as the appropriate department of State government to set Medicaid rates. The amendment also identified the role of the CON in the rate-setting process for new nursing homes by providing that CON-approved capital costs would control the fixed operating cost component of the rate, while the average cost of comparable facilities would control the variable operating costs component of the rate.

On this issue, Clipper Home takes some comfort from the contents of a letter to it, dated January 9, 1989, from the legal counsel to the department of health and human services, stating in part:

> "I can verify that I advised my client and the Attorney General that in my opinion the Division has no authority to set a rate established by the CON Board, and must establish and pay the rate according to our federally-approved state program of reimbursement. Thus, with respect to the above facility, the Division will establish a rate according to its rules and not as established by the CON Board."

Because the Medicaid rates authorized by the bureau of provider audit are higher than the projections resulting in the CON conditions applicable to Clipper Home, this litigation arose.

In reviewing the board's action, we are guided by RSA 151-C:10, III (Supp. 1989), which provides:

> "Appeals to the Supreme Court.
>
> I. Any person submitting an application for a certificate of need, if aggrieved or dissatisfied with the decision of the board, shall have the right, upon a petition which provides a detailed statement of the grounds upon which the decision of the board is claimed to be erroneous and contrary to the facts and the law, to appeal from the decision to the supreme court pursuant to RSA 541.
>
> II. The provisions of RSA 541 shall govern all appeals under this section.

III. The court shall affirm the decision of the board unless it finds it to be arbitrary or capricious or not made in compliance with applicable law."

Clipper Home bears the burden of convincing this court that the board's decision of April 8, 1989, denying relief was arbitrary, capricious or not made in compliance with applicable law. RSA 151-C:10 (Supp. 1989). Because a review of the record reveals that this burden has not been met, we might end the matter here. However, a brief summary of the deficiencies in the record which lead us to conclude as we do may be helpful to the board and other applicants in the future. A proper starting point for our discussion is the language of the certificate itself.

"A CERTIFICATE OF NEED

The Certificate of Need Review Board, acting as the State Agency, in accordance with RSA 151-C, in conformity with the Public Health Service Act, as amended, relative to Certificate of Need and review of new institutional health services, hereby issues this Certificate of Need.

| | |
|---|---|
| DATE OF ISSUE: | June 2, 1986 |
| APPLICANT: | William Gilmore, Douglas Stockbridge and Paul Holloway d/b/a THE CLIPPER HOME OF NORTH CONWAY[,] North Conway, New Hampshire |
| NEW INSTITUTIONAL HEALTH SERVICE: | Establishment of a 72 bed intermediate care facility (ICF) to be located on Route 302 in North Conway, New Hampshire. |
| DATE OF STATE AGENCY'S DECISION TO APPROVE: | June 2, 1986 |
| CONDITIONS: | 1. Medicaid patients shall, for the first five (5) years, comprise the total number of patients in the facility. |
| | 2. Medicaid reimbursement shall not exceed the following: |

| | |
|---|---|
| 1987 | $52.35 |
| 1988 | $54.97 |
| 1989 | $54.52 |
| 1990 | $54.03 |
| 1991 | $56.73 |

This indicates a factor for inflation.

APPROVED COST:     $2,049,101.

This Certificate of Need is subject to all applicable provisions of RSA 151-C:12 relative to Validity of Certificate of Need.

Certificate No. 82-29     S/Susan Palmer Terry
Susan Palmer Terry, Director Office of Health Services Planning and Review for the Health Services Planning and Review Board"

██ A claim can be made that Clipper Home was caught in a crossfire between areas of conflicting bureaucratic turf and should be given the benefit of any doubt in the applicable rate setting processes. Pursuing this argument, Clipper Home asserts that because the board seeks to enforce a condition in the CON, it is attempting to "usurp the power of another agency indirectly by exacting promises from applicants on issues controlled by another agency." It might be interesting to speculate upon the probable posture of the parties in the event that the rates authorized by the bureau of provider audit were lower than those contained within the CON. However, that is not the case here. The claim that the board is usurping the power of the bureau of provider audit is without merit. The board is not seeking to involve itself in setting Clipper Home's Medicaid rates in derogation of authority vested in the bureau of provider audit; it is merely exercising the authority vested in it by RSA 151-C:9 (Supp. 1989) to include conditions in a CON and to enforce them. The board, in reliance on the financial data submitted by the applicant relative to projections of charges per day for Medicaid patients, as was done in this case pursuant to N.H. Administrative Rules, He-Hea 903.01(d)(b), included the projected rate as a condition of the CON. If we were now to say that such conditions are unenforceable, the underlying policy behind the CON procedure, to insure the containment or the reduction in the cost of delivery of institutional health services, would be frustrated.

■ Clipper Home also argues that the board erred in refusing to amend the CON conditions to account for "unforeseen and uncontrollable" labor costs incurred after the granting of the CON. This is not a claim that requires analysis or discussion, because there is no statutory provision or administrative rule which permits the board to exercise such discretion or to grant such relief.

■ Clipper Home's last contention is that the language of RSA 151-C:12, IV-a (Supp. 1989) entitles it to relief from the constraints contained within the CON that limit the Medicaid rate it may recover. This statute provides:

"(a) Prior to completion of the proposed project, the board may require any applicant to file a change of scope when any documentation or other material submitted to the board indicates that:

(1) The nature, scope, or location of the project will differ substantially in the opinion of the board from those described in the application.

(2) The method of financing will differ substantially because the estimated capital expenditure will exceed that proposed in the application by 15 percent plus the inflation factor, as specified in RSA 151-C:12, IV.

(3) The identity of the applicant has changed.

(b) The board may waive the requirements of subparagraph (a)(1), (2) or (3), if it is determined that the proposed change in scope of the project is technical or otherwise insignificant."

RSA 151-C:12, IV-a (Supp. 1989). Clipper Home asserts that the 15% leeway factor is as applicable to operating costs as it is to construction costs. We disagree. A fair reading of the plain language of the statutory provisions in context supports the position that "project costs" are in fact capital costs, not operating costs. The statute makes reference throughout section 12 to such concepts as the completion of the project and project completion date. Without belaboring what to us appears fairly obvious, we adhere to the view that the 15% "play in the joints" does not refer to operating costs. If the legislature had intended it otherwise, it could have so provided in clear statutory language.

*Affirmed.*

HORTON, J., did not sit; the others concurred.